# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DRYSPACE, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CRAWLSPACE CONCEPTS, L.L.C.,<br><br>　　　　Defendant. | No. 10-CV-100-LRR<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

III.  SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

V.    RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . *3*

VI.   ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
　　　A.   *Motion to Strike* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
　　　B.   *Motion to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
　　　　　1.   *Parties' arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
　　　　　2.   *Applicable law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
　　　　　3.   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
　　　　　　　i.   *General jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . *8*
　　　　　　　ii.  *Specific jurisdiction* . . . . . . . . . . . . . . . . . . . . . . *11*
　　　　　4.   *Transfer* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## *I. INTRODUCTION*

The matters before the court are Defendant Crawlspace Concepts, L.L.C.'s "Motion to Dismiss for Lack of Personal Jurisdiction" ("Motion to Dismiss") (docket no. 9) and "Motion to Strike the Affidavit of [Plaintiff's counsel] Vernon P. Squires" ("Motion

to Strike") (docket no. 16).[1]

## II. PROCEDURAL BACKGROUND

On July 26, 2010, Plaintiff Dryspace, Inc. filed a three-count Complaint (docket no. 1) against Defendant, alleging Service Mark Infringement, Unfair Competition/Trade Name Infringement and a violation of the Anti-Cybersquatting Protection Act. On November 29, 2010, Defendant filed the Motion to Dismiss. On January 26, 2011, Plaintiff filed a Resistance (docket no. 15). On February 9, 2011, Defendant filed a Reply. On that same date, Defendant filed the Motion to Strike. Plaintiff did not resist the Motion to Strike, and the time for doing so expired. *See* LR 7.e (stating that a resistance must be filed "within 14 days after the motion is served"); LR 6 (providing an additional three days when service is completed electronically).

Defendant asks the court to hold a preliminary hearing on the Motion to Dismiss, or in the alternative, to permit the parties to present oral argument. The court finds that a hearing and oral argument are unnecessary. The Motions are fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

The court has federal question subject matter jurisdiction over Plaintiff's claims because they arise under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(d). *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.").

## IV. STANDARD OF REVIEW

"'To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction,' and may do so by affidavits,

---

[1] The court occasionally refers to the Motion to Dismiss and the Motion to Strike together as "the Motions."

exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004) (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)). Although the court must view the evidence in the light most favorable to the nonmoving party and resolve all factual conflicts in its favor, "as 'the party seeking to establish the court's in personam jurisdiction, [the nonmoving party] carries the burden of proof and the burden does not shift to the person challenging jurisdiction.'" *Id.* (quoting *Epps*, 327 F.3d at 647).

## V. RELEVANT FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the facts are as follows. Plaintiff is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. Plaintiff provides commercial and industrial waterproofing services. Plaintiff's services include underground waterproofing designed to protect buildings from moisture. On June 24, 2003, Plaintiff registered the term "Dryspace" with the United States Patent and Trademark Office.

Defendant is a Michigan limited liability company with its principal place of business in Walled Lake, Michigan. Matthew Leech founded Defendant in 2007. Defendant manufactures and sells plastic vapor barrier products to control moisture in crawlspaces. Defendant does the majority of its marketing through its website, www.crawlspaceinfo.com. Defendant's products include a vapor barrier product called "DrySpace." In marketing the DrySpace product, Defendant places the "TM" symbol next to the term "DrySpace." During a deposition, Leech testified that before using the "TM" symbol, Defendant researched whether anyone owned trademark rights to the term "DrySpace." However, because the deposition was limited to issues of personal jurisdiction, Leech declined to testify about the outcome of the research.

According to Defendant's website, Defendant sells its products throughout the United States. In 2010, Defendant sold its products in approximately 45 to 47 different

states, and over ninety percent of its sales were in states other than Michigan. On its website, Defendant recently advertised a promotion offering free shipping to customers in the lower 48 states, including Iowa. However, Leech testified that Defendant has never made a sale in the State of Iowa.

On May 5, 2010, Plaintiff sent Defendant a fax directing Defendant to cease and desist its use of the DrySpace name. On that same date, Defendant obtained the domain name www.dryspace.net. Defendant owns approximately 88 domain names, and most of them, including www.dryspace.net, link to Defendant's old website. In November of 2010, a Cedar Rapids, Iowa, contractor contacted Defendant about its products. Defendant declined to work with the Iowa contractor in an effort to avoid subjecting itself to jurisdiction in Iowa courts. On January 17, 2011, Defendant offered to sell the www.dryspace.net domain name to Plaintiff for $100,000.

## VI. ANALYSIS

### A. *Motion to Strike*

In the Complaint, Plaintiff alleges that Defendant "had a bad faith intent in registering www.dryspace.net to profit from [Plaintiff's] service mark[.]" Complaint at ¶ 27. Plaintiff argues that Defendant's registration of the domain name on the same day that it received Plaintiff's cease and desist letter evidences Defendant's bad faith. In its Resistance to the Motion to Dismiss, Plaintiff argues that Defendant's offer to sell the domain name to Plaintiff for $100,000 constitutes additional evidence of Defendant's bad faith. Plaintiff's counsel, Vernon P. Squires, attached an affidavit to the Resistance, in which he avers that "[o]n January 17, 2011, three days after [Leech's deposition], [Defendant] offered to sell the domain name www.dryspace.net to [Plaintiff] for $100,000." Affidavit of Vernon P. Squires ("Squires Affidavit") (docket no. 15 at 26-27) at ¶ 2. Squires also avers that "[e]vidence of this offer is not presented to the [c]ourt for purposes of showing liability, but rather as an element of Count III in Plaintiff's

Complaint, in which [Plaintiff] alleges that [Defendant] registered the domain name in bad faith." *Id.* at ¶ 3. In the Motion to Strike, Defendant argues that the Squires Affidavit should be stricken because it constitutes evidence of inadmissible settlement discussions. Defendant contends that Plaintiff offers this evidence to establish Defendant's liability. *See* Motion to Strike at ¶ 2 (citing Fed. R. Evid. 408) (other internal citations omitted).

Although evidence of conduct during settlement negotiations is generally inadmissible to prove a party's liability for the underlying claim or the amount of the claim, it is admissible for other purposes. *See* Fed. R. Evid. 408(a) & (b). Plaintiff is not attempting to use the evidence of Defendant's alleged settlement offer to prove Defendant's liability. Instead, Plaintiff references the alleged settlement offer to assist the court in its personal jurisdiction inquiry, specifically, whether Defendant intentionally directed tortious conduct toward an Iowa resident. This is not a prohibited purpose under Federal Rule of Evidence 408. As such, the evidence is admissible. *See* Fed. R. Civ. P. 408(b) (providing that evidence of settlement discussions is admissible "if the evidence is offered for purposes not prohibited by subdivision (a)"). *See also Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 n.3 (D.N.M. 2007) (denying a motion to strike an email containing an offer to negotiate a settlement because the email was relevant "to the personal jurisdiction issue"). Consequently, the court shall deny Defendant's Motion to Strike.

### B. Motion to Dismiss
#### 1. Parties' arguments

Defendant argues that it is not subject to personal jurisdiction in this court because Defendant lacks the requisite minimum contacts with the State of Iowa. Defendant, therefore, asks the court to dismiss Plaintiff's action under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).

Plaintiff counters by arguing that the court should exercise personal jurisdiction over Defendant because Defendant (1) "conducts business nationwide"; (2) "adjusted its

business operations specifically to avoid jurisdiction"; and (3) "directed tortious conduct toward [Plaintiff,] an Iowa resident." Resistance at 4. In the alternative, Plaintiff moves the court to transfer the case to the United States District Court for the Eastern District of Michigan, Southern Division.

### *2.     Applicable law*

"A federal court may exercise personal jurisdiction over a nonresident defendant only if doing so is consistent with both the forum state's long-arm statute and the requirements of the Due Process Clause." *Primus Corp. v. Centreformat Ltd.*, 221 F. App'x 492, 493 (8th Cir. 2007) (per curiam) (citing *Romak*, 384 F.3d at 984); *see also Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1143 (7th Cir. 1975). Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curiam) (same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (2005) (same); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa App.2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court only needs to examine whether the exercise of personal jurisdiction over Defendant comports with due process. *Hicklin*, 959 F.2d at 739.

"The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "'Sufficient contacts exist when the defendant's conduct and the connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 1090-91 (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816,

818 (8th Cir. 1994)).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) ("The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."). General jurisdiction exists "if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances, the alleged injury need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)). However, the plaintiff "must make a prima facie showing . . . that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Keeton*, 465 U.S. at 774). "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). The Eighth Circuit Court of Appeals has "instructed courts to consider the following factors when resolving a personal jurisdiction inquiry: '(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Id.* at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*,

97 F.3d 1100, 1102 (8th Cir. 1996)); *see also Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (creating five factor inquiry).

### *3. Application*

#### *i. General jurisdiction*

"A court obtains general jurisdiction 'against a defendant who has continuous and systematic contacts with the forum state, even if the injuries did not arise out of the defendant's activities directed at the forum.'" *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal marks omitted) (quoting *Dever*, 380 F.3d at 1073). Plaintiff argues that Defendant is subject to general personal jurisdiction in Iowa because, on its website, Defendant "holds itself out as conducting business nationally, welcoming orders for its 'Dryspace' product from anywhere in the country and promising free shipping to 'the lower 48' states, including Iowa." Resistance at 5-6. Plaintiff further argues that Defendant's "business model" is such that Defendant should reasonably anticipate being haled into court in Iowa. *Id.* at 6.

In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit Court of Appeals addressed the issue of whether a website may provide sufficient contacts to invoke general jurisdiction. The Eighth Circuit Court of Appeals recognized that many courts have adopted the "sliding scale" approach, established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to measure website contacts for purposes of *specific* jurisdiction. *Lakin*, 348 F.3d at 710. The "sliding scale"approach is based upon the notion that "'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that the entity conducts over the Internet.'" *Id.* (quoting *Zippo*, 952 F. Supp. at 1124).

> At one end of the spectrum are situations where a defendant
> clearly does business over the Internet. If the defendant enters
> into contracts with residents of a foreign jurisdiction that

-8-

> involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet [website] which is accessible to users in foreign jurisdictions. A passive [website] that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive [websites] where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website].

*Id.*

The Eighth Circuit Court of Appeals determined that, while the *Zippo* model is an appropriate approach when considering specific jurisdiction, it is not sufficient, in and of itself, to determine whether the contacts are both substantial and continuous for purposes of general jurisdiction. *Id.* at 711. In other words, "[u]nder the *Zippo* test, it is possible for a [website] to be very interactive, but to have no quantity of contacts." *Id.* at 712. Thus, the Eighth Circuit Court of Appeals found that the *Zippo* test was just the starting point in a court's website-based general jurisdiction analysis. In addition to the nature and quality of a website (as captured by the *Zippo* test), the Eighth Circuit Court of Appeals held that it was also necessary to weigh the quantity of the defendant's contacts via its website. *See id.* Accordingly, when determining whether Defendant's contacts with Iowa, through its website or otherwise, are sufficient to establish general jurisdiction, the court must consider, among other things, the nature, quality and quantity of those contacts. *See id.*; *Aftanase*, 343 F.2d at 197 (creating five factor inquiry).

The facts demonstrate that Defendant is a Michigan Limited Liability Company with its principal place of business in Michigan. With the help of its website, Defendant sells its product throughout the United States and has advertised at least one promotion

applicable to the lower 48 states, which includes Iowa. In November of 2010, an Iowa contractor contacted Defendant, but Defendant declined to work with the contractor to avoid jurisdiction in the Iowa courts. These limited contacts with the State of Iowa do not constitute the type of continuous and systematic contacts necessary for this court to exercise general personal jurisdiction over Defendant. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.5 (3d ed. 2002) (noting that, in order for a defendant to be subject to general jurisdiction in a state, "the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction").

The record suggests that Defendant does not have an office in Iowa. Similarly, Defendant does not have a telephone number, a bank account, or any employees, representatives or customers in Iowa. *See VGM Fin. Servs. v. Singh*, 708 F. Supp. 2d 822, 835 (N.D. Iowa 2010) (finding defendant's contacts with Iowa insufficient to establish general jurisdiction where, among other factors, defendant did not have an office, telephone number, bank account or any employees, representatives or agents in Iowa). In fact, Defendant has never sold a single product or trained a single contractor in Iowa. While Defendant does use a website to sell its product throughout the United States, Plaintiff has not presented any evidence that the website is interactive or of the quantity of Defendant's contacts with Iowa residents through its website. *Cf. Lakin*, 348 F.3d 704, 712-13 (finding interactive website insufficient to confer general jurisdiction without information about the quantity of defendant's contacts with state residents through the website). Furthermore, the fact that one Iowa contractor emailed Defendant, and Defendant declined to work with the contractor to avoid jurisdiction, is insufficient to establish general jurisdiction. *Cf. Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1342 (8th Cir. 1983) (reversing district court's finding of personal jurisdiction

despite defendant's express intent to sell its product nationally and defendant's attempt to avoid personal jurisdiction in Minnesota by refusing to fill an order placed by a Minnesota business). Consequently, Plaintiff has not met its burden to demonstrate that Iowa courts have general jurisdiction over Defendant. *See Romak*, 384 F.3d at 983-84 (quoting *Epps*, 327 F.3d at 647).

### ii. *Specific jurisdiction*

"Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586). Plaintiff asserts that the court has specific jurisdiction over Defendant because Defendant directed tortious conduct at an Iowa business. Plaintiff relies upon the *Calder*[2] effects test, which provides that

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—in the forum state.

*Id.* at 796 (internal marks omitted) (quoting *Lindgren v. GDT*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)).

Plaintiff alleges that Defendant "intentionally infringed [Plaintiff's] registered mark

---

[2] *Calder v. Jones*, 465 U.S. 783 (1984).

-11-

at least twice: (1) when it originally named its vapor barrier product 'Dryspace' in 2007 despite having done a trademark search; and (2) when it purchased the domain name www.dryspace.net the same day it received a cease-and-desist letter from [Plaintiff's] counsel." Resistance at 7. Plaintiff maintains that "[t]hese intentional acts were consciously directed at an Iowa resident and suffice to confer specific jurisdiction." *Id*. Although the court accepts as true Plaintiff's allegations that Defendant intentionally infringed Plaintiff's registered trademark, this allegation alone fails to show how Defendant "uniquely or expressly aimed" its tortious acts at Iowa. *Johnson*, 614 F.3d at 796. Thus, Plaintiff has failed to demonstrate that Defendant's acts were "'performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.*, 946 F.2d at 1390-91 (quoting *Brainerd*, 873 F.2d at 1260).

Furthermore, even if Plaintiff could demonstrate that Defendant expressly aimed its acts at Iowa and that the consequences of Defendant's tortious acts were suffered in Iowa, the *Calder* effects test is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson*, 614 F.3d at 796-97. The court must also consider the five factors set forth in *Aftanase*, 343 F.2d at 197. Specifically, the court must consider "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dakota Indus.*, 946 F.2d at 1390 (citing *Land-O-Nod*, 708 F.2d at 1340). After considering these factors, the court concludes that Plaintiff has not demonstrated that Defendant has sufficient minimum contacts with Iowa to justify this court's exercise of personal jurisdiction. *Cf. Johnson*, 614 F.3d at 797 ("We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.").

*4.     Transfer*

Upon the court's finding that Defendant is not subject to personal jurisdiction in Iowa, Plaintiff moves the court to transfer the case instead of dismissing it. Defendant does not oppose Plaintiff's alternative motion to transfer. Pursuant to 28 U.S.C. § 1406(a), a district court may transfer a case filed in an improper venue "to any district or division in which it could have been brought," so long as transfer is in the interest of justice. The United States Supreme Court has held that "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendant[] or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Under the facts presented here, the court concludes that it is in the interest of justice to grant Plaintiff's alternative motion to transfer the case to the United States District Court for the Eastern District of Michigan, Southern Division. *Cf. Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft*, 495 F.3d 582, 583-84 (8th Cir. 2007) (discussing propriety of transfer from one United States District Court to another due to lack of personal jurisdiction).

## *VII. CONCLUSION*

In light of the foregoing, **IT IS HEREBY ORDERED**:

(1)    The Motion to Strike (docket no. 16) is **DENIED**;

(2)    The Motion to Dismiss (docket no. 9) is **GRANTED IN PART** and **DENIED IN PART**; and

(3)    **THIS ACTION SHALL BE TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**.

**IT IS SO ORDERED.**

**DATED** this 24th day of March, 2011.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

-14-